```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
SECURITIES AND EXCHANGE COMMISSION,       :
                                          :
                    Plaintiff,            :    98 Civ. 1818 (DLC)
                                          :
              -v-                         :         ORDER
                                          :
THOMAS CAVANAGH, et al.,                  :
                                          :
                    Defendants.           :
                                          :
------------------------------------------X
```

DENISE COTE, District Judge:

On May 21, 2014, the Court received a <u>pro se</u> letter from Mr. Jay Booth, setting forth, <u>inter alia</u>, his concerns with the Securities and Exchange Commission ("SEC") and its compliance with the permanent injunction entered in this action, as it relates to the SEC's enforcement of certain actions filed in the U.S. District Court for the Eastern District of New York. The letter does not state whether its contents were also served on the SEC. It is hereby

ORDERED that the SEC is advised of Jay Booth's <u>pro se</u> letter. A scanned copy of the letter and its mailing envelope is attached to this Order.

SO ORDERED:

Dated:   New York, New York
         May 22, 2014

                                  _____
                                          DENISE COTE
                                  United States District Judge



RECEIVED MAY 21 2014 CHAMBERS OF DENISE CO

May 15, 2014

Judge Failla
Judge Cote

Four years ago, the SEC filed charges against SpongeTech Delivery Systems (SPNGQ), alleging conduct very similar to the charges filed against Thomas Cavanagh and Frank Nicolois in 1998. On April 20, 1998, Judge Cote entered a preliminary injunction against Cavanagh, et al, in that case.

In a Superseding Indictment, Cavanagh and Nicolois were added as defendants in the SpongeTech case. They were charged with Structuring, and with Contempt of Judge Cote's Order. They were allowed to plead guilty to only the Structuring charge, and have now completed their sentences.

Additional details follow.

The bottom line is that myself, and over 30,000 of my fellow shareholders, were victimized in the SpongeTech case, which is still on-going.

The SEC has never bothered to seek disgorgement in the SPNGQ case from the people who benefited from their ability to buy these shares at steep discounts to the market price, which they did in the 1998 Cavanagh case.

My purpose in writing is to advise the Court that SPNGQ shareholders were deprived of the protection that Judge Cote intended, not only by the actions of Cavanagh and Nicolois (seemingly), but also by the SEC's disregard for our rights, and their lack of enforcement of Judge Cote's Order. In addition, I wanted the Court to be aware of the details of Cavanagh's and Nicolois' activity, as shown below, and which began even before Judge Cote's final decision in the prior case.



2014 MAY 19 PM 3:05 U.S. COURT OF APPEALS

Various documents including Doc 197 Redacted Version of Sentencing Memorandum for Thomas Cavanagh. Original filed under seal.

Case 1:10-cr-00600-DLI Document 197 Filed 12/21/11 Page 1 of 20 PageID #: 1218

Pg 8 Doc 197
On March 13, 1998, the SEC commenced a civil action against Mr. Cavanagh and others alleging the sale of unregistered securities and fraud in the sale of securities…

…he did not disclose that he was a **co-signatory on an account at Affidia Bank** in Switzerland. He pleaded guilty to one count of perjury arising from this omission…

*SECURITIES AND EXCHANGE COMMISSION v. CAVANAGH, et al., 98 Civ. 1818 (DLC) (S.D.N.Y)*

*On January 21, 2000, the Honorable Denise L. Cote of the United States District Court for the Southern District of New York issued a default judgment against relief defendants Bernd Stieghorst, Jean-Pierre Neuhaus and* **The Owners of Account No. 13601/Cumbre at Affida Bank of Zurich (now Bank Leu).** *The Court ordered these overseas relief defendants, who received free Electro-Optical Systems Corp. ("EOSC") shares or proceeds from the sale of those shares, to disgorge the sale proceeds and any EOSC shares they retain. Stieghorst, of Cologne, Germany, was ordered to pay $271,281 in EOSC sale proceeds and $26,061.46 in prejudgment interest and to disgorge 24,000 shares of EOSC stock. Neuhaus, of Zurich, Switzerland, was ordered to pay $565,031 in EOSC sale proceeds and $5,281.45 in prejudgment interest and to disgorge 34,000 shares of EOSC stock. The Affida account owners were ordered to pay $1,000,000 in EOSC sale proceeds and $96,068.10 in prejudgment interest, subject to reduction for payments received by the Court from specified defendants and relief defendants in excess of $8,904,111.71.*

Pg 9.Doc 197
**In 2003**, Mr. Cavanagh went to work as a Marketing Representative for Vanity Events in New York…He brought people into the business and got paid for those who purchased the product, essentially by commission.

*U.S. Securities and Exchange Commission*

*Litigation Release No. 18787 / July 20, 2004*

*Court Grants Summary Judgment Against Thomas Cavanagh, Frank Nicolois and Eight Other Defendants and Finds That They Engaged in Pump-and-Dump Scheme*

*Court Orders Over $18 Million in Disgorgement and $3.3 Million in Penalties*

*Securities and Exchange Commission v. Thomas Cavanagh, et al., 98 Civ. 1818 (SDNY) (DLC)*

**On July 15, 2004**, *U.S. District Judge Denise Cote granted summary judgment in favor of the Commission and against the ten remaining defendants in a civil action arising out of the fraudulent offering and sale of securities of Electro-Optical Systems Corporation. In its order, the court found that Thomas Cavanagh, Frank Nicolois, and their company U.S. Milestone had violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 (Securities Act) and Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act),*

Pp 9 – 10 Doc 197
***In 2005***, Mr. Cavanagh went to work for SpongeTech, Inc., as a marketing representative…As part of his employment, he attended trade shows all over the United States to promote sponges. He Also traveled to Spain, Switzerland, and all over Europe to sell sponges and to explore possible major distribution deals. In several instances, the European businessmen he approached to distribute sponges were more interested in investing in SpongeTech. Mr. Cavanagh passed on those contacts to Mr. Moskowitz as potential investors…he was compensated…for investments that resulted from the introductions…

In a Superseding Indictment, Cr. No. 10-600 (S-1) (ARR), both Cavanagh and Nicolois were named as defendants stemming from their roles as "international sales' employees at SpongeTech (para 6 of the Superseding Indictment). They were charged with knowingly and intentionally structuring payment transactions for the purpose of evading reporting requirements (Count 6). Count 7 of the Superseding Indictment charged both defendants with Contempt of Court for structuring their assets.

As I recall, Mr. Cavanagh made over $700,000 from one year to the next during this time. One question to be asked is, who were these European businessmen? Were any of them the subject of a Settlement Agreement between Canaccord Genuity and the Investment Industry Regulatory Organization of Canada (IIROC)? The Canadian Regulator found the following:

31. DS was an RR (Registered Representative) at Canaccord's head office in Vancouver. He was the RR responsible for client accounts for six different Panamanian corporations that were beneficially owned by individual Europeans. The New Client Application Form (NCAF) for each account indicated that the clients shared the same address which was the Panamanian address of a corporate trust services firm which managed each of the corporate entities. Four of the six accounts were opened on the same day in March, 2008. Each also had a bank account at the same bank in Hungary.

32. The accounts were almost exclusively used for the deposit of OTCBB share certificates and subsequent sale of those shares into the market.

33. Between April and September 2009, these six Canaccord clients received in share certificates for a total of 194 million shares of an OTCBB company, SpongeTech Delivery Systems, Inc. (SpongeTech). There were 12 deposits that accounted for all 194 million shares. Almost immediately after they were deposited to the accounts at Canaccord, these shares were then sold for proceeds of just over $15 million (USD). The sale proceeds were then wired to bank accounts in Hungary. Canaccord approved the deposit of the certificates and the outgoing wire transfers.

34. .

35. ...For a majority of the deposits, Canaccord was unable to produce records as to how the clients obtained the shares. For the remainder of the deposits, Canaccord produced unexecuted share purchase agreements which indicated that the shares had been purchased only days prior to their deposit at Canaccord, and, where a price was indicated, at a substantial discount to the market price.

36. .

37. ...No allegations of wrong-doing were made in any civil, criminal, or regulatory proceeding against any of Canaccord's clients.

The statement in paragraph 37 may need to be qualified, if Jean-Pierre Neuhaus (a relief defendant in your 1998 Cavanagh case, and, according to Kaja Whitehouse of the New York Post, also a SpongeTech investor), was also one of the six Europeans in the Canaccord case. Neuhaus was nabbed in New York City as the result of a sting operation that lured him to the United States to discuss a scheme to bribe brokerages to sell shares of Axius, Inc. There were also at least two other 1998 Cavanagh case relief defendants involved with SpongeTech, Martin Hodas and Joseph Falco. There were also European entities involved with SpongeTech that may or may not be related to European entities in the 1998 case. Not enough information is available to make that determination.

I provided the following in a Motion I submitted to the bankruptcy court, relative to this issue.


**The SEC faces considerable exposure for their failures to safeguard the Debtor and its shareholders from known threats of stock manipulation. In addition, the Commission made decisions, in the course of this investigation, which may have actually harmed the Debtor and its shareholders, and they have attempted to abuse the power of the Court to hide their failings.**

## Known Threats of Illegal Selling and Stock Manipulation

In a letter I wrote to the Court, titled "July 2012 SEC Litigation Releases relevant to SpongeTech," I pointed out the SEC's awareness of penny stock manipulators, and other defendants in securities cases, engaged in the trading of SpongeTech stock (Doc 392). According to the DOJ, some of these responsible parties had been under investigation since 2007. "The federal charges against D'Amaro and others were unsealed in May 2009. Those charges were part of a two year securities fraud investigation into the manipulation of so-called "penny stocks" traded through the over-the-counter stock markets…"

However, the case that I would now like to draw to the Court's attention is that of SEC vs Cavanagh, et al., which goes back to 1998. 98 Civil Action No. 1818 (S.D.N.Y.). The titled defendant in this often-cited case is also a defendant in the SpongeTech case.

See also SEC Litigation Release No. 15669 / March 13, 1998

http://www.sec.gov/litigation/litreleases/lr15669.txt

The last Litigation Release pertaining to this case was in 2004, which was **one year after** Mr. Cavanagh began working as a "marketing representative" for Vanity Events, a company related to SpongeTech. He began working for SpongeTech, also as a marketing representative, in 2005, according to his counsel's letter to Judge Irizarry in regards to his sentencing.

Case 1:10-cr-00600-DLI Document 197 Filed 12/21/11 Page 1 of 20 PageID #: 1218

The primary defendants in the 1998 case included Frank Nicolois, in addition to Thomas Cavanagh, and their investment banking company, US Milestone. Nicolois is also a defendant in the SpongeTech case. The judge in this case was Denise Cote of the United States District Court for the Southern District of New York.

"In her April 20 ruling, Judge Cote found that defendant Cavanagh was the mastermind and a central figure in the fraud who controlled various nominee accounts through which the fraudulent trades were made…" SEC News Digest, Issue 98-77, April 22, 1998.

The issue of nominee accounts is conspicuously absent in the SpongeTech case. It likely should not be, based upon observations of repeated concurrent issuances and cancellations to various groupings of stock beneficiaries, which may be suggestive of some type of central control.

There are at least three other defendants in the 1998 case, besides Cavanagh and Nicolois, that were also involved in the SpongeTech market. Unrelated charges were announced in July 2012, as I informed the Court, against one of those defendants, Jean-Pierre Neuhaus.

Two interesting aspects of the 1998 case versus Cavanagh, et.al, besides having so many defendants in common with investors/defendants in the SpongeTech case, are as follows.

First is the District Court's ruling that disgorged money be returned to investors.
In affirming Judge Cote's ruling, the Second Circuit Court provided the following synopsis of the allegations, which closely resembles the allegations against SpongeTech, in their decision. (United States Court of Appeals, Second Circuit. - 445 F.3d 105).

"These consolidated cases concern a "pump-and-dump" securities fraud scheme whereby certain defendants artificially inflated a company's stock price, sold high, and left investors holding nearly worthless shares when the price plummeted to a realistic value. Other defendants allegedly (benefited) unjustly from the opportunity to buy shares at nominal prices and then to sell at inflated prices. The Securities and Exchange Commission ("SEC") instituted this enforcement action, alleging that defendants had violated federal securities laws by failing to register shares and by committing fraud. The SEC moved for summary judgment, which the United States District Court for the Southern District of New York (Denise Cote, Judge) granted. On appeal, defendants contend that the District Court's action was erroneous on several grounds, none of which we find meritorious. In this opinion, we consider two of the defendants' arguments in greater detail:

(1) that the District Court should have allowed defendants to benefit from an exemption to the federal securities registration requirements and

(2) that the District Court exceeded its authority in granting equitable disgorgement of defendants' ill-gotten profits.

Because the District Court correctly found that the claimed exemptions do not apply to defendants' actions, and because the remedies imposed by the District Court did not exceed its equity powers, we affirm."

What was the equitable disgorgement Ordered by Judge Cote, and affirmed on appeal?

"The District Court found that Cavanagh, Nicolois, and USM violated antifraud and registration requirements of securities laws… namely Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 7.7e(a), e(c), q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)… and **permanently enjoined them from further violations**. The District Court also imposed civil penalties upon these three defendants of $1,000,000 each and ordered that they disgorge to the District Court all profits obtained in connection with their scheme, a combined total of $15,564,863.02, "plus interest, less any disgorgement amounts actually paid by other defendants and relief defendants." The District Court maintained jurisdiction for the purpose of overseeing the final judgment "and any plan of distribution of disgorged funds to *victims of the fraud*." (emphasis added).

Additional clarification as to who were the "victims of the fraud" was provided in SEC Litigation Release 18864, and stated the following.

"The final judgments require defendants Thomas Edward Cavanagh, Frank Nicolois and U.S. Milestone **to pay disgorgement of $15,061,333 for the benefit of defrauded investors**."

If the Debtor repurchased over 526m shares, as they reported in the 10Q filed in April, 2009, this could mean that the company is holding shares, and entitled to recover a pro-rata amount of any money that may be disgorged in the SpongeTech case. I sent a letter to the Court, which reasonably reflects how this repurchase could have been made (Doc 389). This is an issue that merits further examination, especially in light of what happened after the one billion shares appear to have been placed into a custodial account (DWAC'd) on February 4, 2009.

This unimpeded access to the Debtor's equity market allowed the opportunity for at least nine people, or the entities they controlled, to illegally sell or to manipulate the Debtor's stock, if their conduct in the Debtor's market mirrored their conduct in the markets of the various other companies they were previously charged with victimizing. That is the second aspect of this case, to be noted. That market access was gained despite the defendants being permanently enjoined from further violations, by Court Order, and at the request of the SEC.

For the SEC to use non-disclosure to promote more and future fraud, for whatever reason, is nothing less than for the SEC to allow for the creation of more and future victims. It amounts to a failure to protect the investing public, as they are chartered to do."

Also provided in my Motion was the following.

"The Second Circuit Court of Appeals noted the following definition of a "dealer," in their Discussion of this case.

"A "dealer" is "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Id. § 77b(a)(12)."

Paragraph 16, 445 F.3d 105

Argued: September 9, 2005.

Decided: April 10, 2006.

What we have, in regards to all of these defendants, is a history of the application of the SEC's "discretionary authority." The Commission chose, at their discretion, to bring these cases against the defendants. The Commission chose, at their discretion, to Move

the various Courts that heard these cases, to issue permanent injunctions against the defendants. The Courts Ordered that the defendants be enjoined from further violations of the cited securities laws, as requested by the Commission.

Therefore, any subsequent violations of those laws, by the enjoined defendants, and discovered by the Commission, MUST be prosecuted by the Commission. The SEC cannot be permitted to apply discretionary authority, in deciding whether or not to bring charges against subsequent violations of the law, by those enjoined defendants. To do so would allow an agency of the Executive Branch to completely undermine the Judiciary. There would be no such thing as a Court's Order of a permanent injunction in securities law cases. The investing public would be deprived of the Courts' intended relief, and their security would be at the whim of the SEC.

Nor can the SEC be permitted to skate around the discovery of continued violations of the law, by the enjoined defendants, in contempt of the Courts' Orders. Here, it is noted that defendant Cavanagh, according to the previously-cited sentencing memorandum to Judge Irizarry "...went to work for SpongeTech as a marketing representative, selling their products at trade shows in the United States and abroad. Some prospective distributors of SpongeTech products became interested in investing in the company. Mr. Cavanagh referred them to Steven Moskowitz. Mr. Cavanagh received payments based on the amount of product he sold, and based on investments made in SpongeTech by persons he referred to Mr. Moskowitz...He also traveled to Spain, Switzerland and all over Europe to sell sponges and to explore possible major distribution deals. In several instances the European businessmen he approached to distribute sponges were more interested in investing in SpongeTech. Mr. Cavanagh passed on those contacts to Mr. Moskowitz. " Cavanagh was compensated for any investments that resulted.

Cavanagh was previously accused of controlling "Spanish nominee" accounts. SpongeTech has one investor, located in Spain, that has received a total of 51,500,000 shares. It should also be noted that Jean-Pierre Neuhaus was disgorged over a half million dollars in the SEC v Cavanagh case, that he is based in Switzerland, and that he is the subject of one of the July 2012 SEC Litigation Releases I previously informed the Court about.

Recalling the definition of a "dealer," "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Id. § 77b(a)(12)," it is reasonable for shareholders to be concerned about the potential for abuse of our market, under these circumstances.

This conduct resulted in both Cavanagh and Nicolois being charged in the Superseding Indictment. Surprisingly, Contempt of Court charges were filed, even if they were likely too narrow in scope. Not surprisingly, however, Cavanagh was allowed to negotiate out

of even that too-narrow charge, and was convicted solely of structuring. The question is whether or not Judge Cote's permanent injunction against these defendants was ignored, by the SEC's failure to issue more comprehensive Contempt of Court, and other charges, against these defendants, in the SEC's application of discretionary authority.

Another question regarding the SEC's discretionary authority relates to the lack of charges filed against Harmon Trading Group and perhaps even against Gerard D'Amaro. We know that D'Amaro was the subject of an SEC investigation against serial penny stock manipulators, commenced one year prior to his appearance as a stock beneficiary in the SpongeTech market. We also know that Harmon Trading Group abruptly closed their doors when the SEC issued Wells Notices to SpongeTech. Is the SEC using their discretionary authority, avoiding prosecution of these cases, to hide their failings to safeguard the Debtor and its shareholders, as seems very likely?

These are not merely rhetorical questions. Details regarding these compromises and agreements, which could easily impact recovery to the Debtor, its creditors, and its shareholders, became discoverable to the Court, when the SEC's settlement agreement was presented for the Court's approval. Bankruptcy Rule 9019 is intended to prevent the making of concealed agreements which are unknown to the creditors, and unevaluated by the Court (and the trustee, in our case). The SEC willfully and deliberately entered into the settlement agreement with the trustee. They thus became subject to Bankruptcy Court rules, and there can be no claim of any type of authority that would permit the non-disclosure of details regarding these settlements and compromises.

Some of the questions which should be explored, based on the information thus far reviewed, are as follows.

1. Why have there been no charges filed against members of the Cavanagh group, other than structuring? The circumstances are strikingly similar, between Electro-Optical Systems (the 1998 Cavanagh case), and the Debtor's case. Cavanagh was right back in Spain and Switzerland, and receiving compensation for his efforts to sell allegedly unregistered shares of SpongeTech stock to a network of people, which may have included Neuhaus, in Switzerland, and others located in Spain.

2. Why has the SEC just recently announced Litigation Releases against Gerard D'Amaro, Michael Xirinachs, and Jean-Pierre Neuhaus?

3. Why weren't charges filed against the Harmon Trading Group?

4. Is the SEC investigating the inaccuracies of Olde Monmouth's Transaction Journal?

5. Why haven't the "gatekeepers," such as the clearing firms and broker/dealers, been charged for allowing the allegedly unregistered shares to be sold?

Jay Booth
SpongeTech shareholder

*Jay Booth*
195 PRIVATE ROAD 4436
RHOME, TX 76078

jayatthelake2003@yahoo.com

FROM: Jay Booth
195 Private Road 4436
Rhome, TX 76078

TO: Thurgood Marshall United States Courthouse
Courtroom 618
40 Foley Square
NY, NY 10007



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14 © U.S. Postal Service; July 2013; All rights reserved.

COPIES MAILED TO:

Jay Booth
195 Private Road 4436
Rhome, TX 76078